## WOLF'S APPEAL.

A widow's dower is not converted into a fixed charge unless there has been an appraisement and acceptance or sale.

Where the heirs dispose of the estate without the widow being a party thereto, her dower is not converted into a fixed annual charge.

If the amount of a widow's dower is not fixed, she is not entitled to be paid for arrearages out of the proceeds of a Sheriff's sale.

Appeal from the Common Pleas of Lancaster County. No. 111 July Term, 1883.

The facts in this case appear from the report of the auditor appointed to distribute $970.77, being the net proceeds of the sale of the real estate of Mrs. Elizabeth B. Ryon, sold by the Sheriff by virtue of a *lev. fa.*, as follows:

George Wolf, of the Borough of Columbia, died on December 14th, 1858, seized of several houses and lots of ground. He left a widow, Sarah Wolf, three daughters, viz.: Mary A., married to John A. Hook, Elizabeth P., married to R. T. Ryon, and Charlotte A., married to James Ryon, and a son, George Wolf, who did not long survive his father. On June 22nd, 1861, Mrs. Hook presented a petition to the Orphans' Court of Lancaster County, praying for the awarding of an inquest to make partition of the real estate of which her father had died seized. The inquest was awarded, and on September 17th, 1861, the inquisition was returned. The real estate was divided into ten purparts, each being separately valued. Purpart No. 2 was valued at $2,000. On September 17th, 1861, the Court granted a rule upon the heirs to appear on the third Monday in November to accept or refuse the property so appraised, or show cause why the same should not be sold. George Wolf's son had died before the institution of the proceedings in partition, and on November 18th, 1861,

being the return day of the rule, the daughters filed the following paper in the Orphans' Court:

In the matter of the partitition of the }
real estate of George Wolf, late     } In the Orphans' Court
of the Borough of Colum-           } of Lancaster Co.
bia, deceased.                     }

Rule on the heirs to accept, &c., &c.

And now, November 18th, 1861, the undersigned, heirs of George Wolf, deceased, refuse to accept any part of said real estate at the appraisement made thereof, and pray the Court to grant an order to the administrator of said deceased to sell the same, returnable on the third Monday of January next.

                                    MARY A. HOOK,
                                    ELIZABETH P. RYON,
                                    CHARLOTTE A. RYON.

On November 18th, 1861, the clerk endorsed on the above paper: "Sale awarded upon giving bond to be approved by the Court." No further proceedings were had until June 18th, 1862, when the Court granted an order of sale for purpart No 6. The premises were returned unsold, and on September 18th, 1862, an alias order of sale was granted, under which purpart No. 6 was sold December 13th, 1862. In 1864, R. T. Ryon, the administrator of the estate of George Wolf, filed an account of the personalty, showing a balance in his hands of $211.19, and also an account of the proceeds of the real estate sold by him, being purpart No. 6, showing a balance in his hands of $3,306.55. There do not appear to have been any debts of George Wolf then unpaid. No other proceedings were ever had in the Orphans' Court with regard to George Wolf's estate.

On March 22nd, 1862, Mrs. Elizabeth P. Ryon and Mrs. Charlotte A. Ryon, and their husbands, executed a release or quit-claim deed to Mrs. John A. Hook for their interest in three pieces of ground, being purparts 3, 5 and 9, as set forth in the inquisition taken of George Wolf's real estate. The consideration named in the release is $4,100, and the three purparts had been appraised at $4,600. By release or quit-claim deed of the same date, Mrs. Hook and her husband conveyed all their interest in six pieces of ground to Mrs. Elizabeth P. Ryon and Mrs. Charlotte A. Ryon. These six pieces were

Nos. 1, 2, 4, 7, 8, and 10, as set forth in the inquisition. The consideration named in Mrs. Hook's release was $8,000 ; and the six purparts had been appraised at $8,900. On February 4th, 1879, Mrs. Charlotte A. Ryon and her husband conveyed their interest in purpart No. 2 to Mrs. Elizabeth P. Ryon, and included in the conveyance a small piece of ground adjoining purpart No. 2, but not included in lands mentioned in the petition for the inquest, or in the inquisition taken. In the release of March 22nd, 1862, and the conveyance of February 4th, 1879, no reference is made to the proceedings in partition, the pieces of ground released or conveyed being described by metes and bounds, but the nine pieces of ground so released and conveyed are the nine purparts Nos. 1, 2, 3, 4, 5, 7, 8, 9 and 10, as set forth in the inquisition.

On February 6th, 1879, Mrs. Elizabeth P. Ryon and her husband executed a mortgage to James B. Clark to secure a loan of $2,500. The mortgage covered the premises released to her on February 4th, 1879, by Mrs. Charlotte A. Ryon, being purpart No. 2 of George Wolf's real estate and the small adjoining piece of ground above referred to.

Default having been made in the payment of the mortgage, a writ of scire facias was issued, judgment obtained and a writ of levari facias issued.

On August 12th, 1882, the real estate mortgaged was sold by the Sheriff and James B. Clark became the purchaser. At this sale, H. M. North, Esq.. attorney for Mrs. Wolf, gave notice that she claimed interest on her dower or thirds in the premises for about twenty years, that she was the widow of George Wolf and the mother of George Wolf, Jr., who had died intestate and without issue, and that her claim was the interest on one-half of the valuation.

The mortgage given to Mr. Clark was the first lien upon the premises sold, and, as has already been stated, the sale was the result of an execution issued upon the judgment obtained upon the mortgage.

The Sheriff took the receipt of James B. Clark for the proceeds of sale and made a special return, Sarah Wolf filed exceptions, an auditor was appointed to make a distribution, and he awarded the fund to James B. Clark.

Exceptions were then filed to the auditors report, by Sarah Wolf, and on April 19th, 1883, the Court dismissed the exceptions, and confirmed the report in the following opinion, per

PATTERSON, J.

The exceptions are:

1st. The auditor erred in awarding the fund to James B. Clark.

2nd. The ruditor erred in not awarding the fund to Sarah Wolf.

In this adjudication, the learned auditor held that there were no arrears of dower due to Mrs. Wolf, the widow of George Wolf, deceased, the former owner of the premises sold on the levari facias, and designated as purpart No. 2, of said decedent's real estate and being the premises sold by the Sheriff; the proceeds of which sale is the fund now being distributed.

That was the only question in controversy, the said widow being a claimant, for arrears of dower, out of the proceeds of sheriff's sale.

The facts in case are clearly set forth in the report, and the auditor, after applying the statutory, and judicial law of this Commonwealth, all fully cited, and as he remarks, so far as he can find, he comes to the conclusion that the proceedings had in partition in the estate of George Wolf, were not so far perfected, as to convert the interest of his widow into an annual fixed dower, charge or annuity, payable by the owners or holders of her husband's lands.

That, therefore, there was no dower on purpart 'No. 2' so sold, and accordingly he awarded the fund arising from the Sheriff's sale to James B. Clark, a lien creditor.

We were well satisfied with the reasoning of the auditor, on the question at issue, and his conclusion on the subject; and we cannot add to the force thereof.

But in our inquiry for authority on this point, since the argument, we have found a decision of our Supreme Court, more recent than any cited to the Court, and which seemed conclusive in affirmation of the auditor's report. It is found

in the Chester County Reports, page 515, Anna M. Ziegler's Appeal. The case went up from the Common Pleas of Cumberland Co., the Court below ruling the case viz: "John Ziegler by his will gave to his widow the one-third part of the issues and profits of the sale of his real estate, and the one-third part of the mansion house for her use, as long as she lived," and bequeathed to his son *all* of his real estate: *Held*, that the interest of the widow was an *estate* in the land, and not a mere charge upon it.

"If she took her statutory allowance as widow, her interest is the same before partition, and not an annual charge until partition.

"If she permitted her son to take her share of the rents, issues and profits, she had a mere personal claim against him, not a lien to follow the proceeds of a Sheriff's sale of his real estate.

"Neglect for twenty-three years to prove such will, when she was both executrix and devisee, must be presumption that she had abandoned it, especially as to strangers."

The Supreme Court in a per curiam, affirmed the Court below, and say: "We are of the opinion that the interest of the appellant (the widow) was an *estate* in the land devised by the husband. In this view, of course, if she permitted her son to take her share of the rents, issues and profits, it became a mere *personal* claim against him, to be asserted by an action, but not a lien to follow the proceeds of sale. The opinion of the Court below sufficiently indicates the correct ground of decision."

This opinion clearly sustains the distribution made by the auditor, and the exceptions to same must be dismissed.

---

Sarah Wolf then appealed, complaining of the action of the Court in not awarding the fund to her.

*H. M. North, Esq.*, for appellant, argued, that there was an appraisement of the real estate on September 17th, 1861, and the widow would be entitled to her share of the rents, issues and profits. The real estate was accepted by the heirs by

deed, though not in the Orphans' Court; Gourley vs. Kinley, 66 Penna., 274; Whitney vs. Emmott, 1 Bald., 303; People vs. Cook, 8 N. Y., 67; Rex vs. Locksdale, 1 Burr., 447; Marshall vs. Langworthy, 6 Hill, 646; Striker vs. Kelly, 7 Hill, 9. The dower was fixed by bill in equity in Davison's Appeal, 95 Penna, 394. Her dower is a lien, even though no order of Court was made as to it; Kline vs. Bowman, 19 Penna., 24; Shertzer vs. Herr, 19 Penna., 34.

*D. G. Eshleman* and *S. H. Reynolds*, for appellees, argued, that a widow entitled to a dower could not enter until it was assigned to her, Plowden 529, Coke on Littleton, 34 b., 37 a. b., Bacon's Ab., 212; Pringle vs. Gaw, 5 S. and R., 536. The widow must proceed under the partition act to have her share assigned to her, and the land must be accepted on the appraisement, or it must be sold in order to fix the interest of the widow; Gourley vs. Kinley, 66 Penna., 274. The authority to fix an annual charge for the widow by bill in equity, as was done in Davison's Appeal, 14 Norris, 394, is by virtue of the Act of March 17th, 1845, section 3, P. L. 160, and the Act of February 14th, 1857, section 1, P. L., 39. Mrs. Wolf's neglect for twenty-five years to have her dower ascertained in the portion of her husband's estate, held by her daughter, must be a presumption that she had abandoned it; Ziegler's Appeal, 1 Chester Co. Rep., 515; Evans vs. Evans, 1 Phila., 113.

The Supreme Court affirmed the decree of the Orphans' Court on June 2nd, 1884, in the following opinion:

PER CURIAM.

The Orphans' Court did not decree the payment of any specific sum to the widow. She did not in any manner assent to the agreement made by the heirs. She was not bound thereby. After omitting to recognize, or ratify, the proceedings between the heirs for twenty years, she cannot now maintain the claim which she seeks to assert.

> Decree affirmed and appeal dismissed at the costs of the appellant.